IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA BALTIMORE | : | |
|     Plaintiff, | : | Civil Action No. 1:07-cv-01244 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| HARRISBURG PARKING | : | |
| AUTHORITY, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Pending before the Court are two separate motions for summary judgment. The first motion has been filed by Defendants Harrisburg Parking Authority, Mark Yobbi, Gail Lewis, and Nancy Keim. (Doc. No. 54.) The second motion has been filed by Defendants Richard Gibney and Jason Brinker. (Doc. No. 59.) The motions have been fully briefed and are ripe for disposition. For the reasons that follow, the Court will grant the motions for summary judgment.

## I.  BACKGROUND[1]

Plaintiff Donna Baltimore has asserted a number of civil rights claims against Defendants under the First, Fourth, and Fourteenth Amendment as well as state law. Plaintiff was employed by Defendant Harrisburg Parking Authority ("the Authority"). (Doc. No. 60 ¶ 1.) The Authority maintained a computer system to track day-to-day activities and ran random audits of ticket transactions for each work shift at least four times per month. (Doc. No. 55 ¶ 17.) Defendant

---

[1] When considering a motion for summary judgment, a court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007) (citation omitted). However, under Local Rule 56.1, statements of material fact supporting or opposing a motion must include a reference to the supporting portion of the record. Therefore, the material facts will be deemed admitted where Defendant has put forward evidence backing its statement of facts and Plaintiff has failed to accompany a denial with a cite to the record. See M.D. Pa. L.R. 56.1.

1

Gail Lewis ("Lewis") was employed by the Authority as a Senior Audit Analyst and also served as the union steward for the American Federation of State, County and Municipal Employees ("AFSCME"). (Doc. No. 55 ¶¶ 7, 22; Doc. No. 60 ¶ 9.)

Plaintiff began her employment with the Authority as a cashier on August 8, 2001. (Doc. No. 60 ¶ 1.) As an employee of the Authority, Plaintiff was a member of AFSCME, District Council 90. (Doc. No. 55 ¶ 7.) Plaintiff's duties as a cashier included taking tickets and collecting parking fees. (Doc. No. 55 ¶ 10; Doc. No. 60 ¶ 3.) To perform these duties, Plaintiff would sign into the Authority's computer system. (Doc. No. 55 ¶¶ 11-12.) When a ticket was taken, Plaintiff would place the ticket in the scanner and the computer would display how much the customer owed. (Doc. No. 60 ¶ 5.) At the end of each shift, the money and tickets that had been collected were deposited with a deposit slip into a safe located in the parking garage. (Doc. No. 55 ¶¶ 15-16.) However, $250 was placed in a bank bag for the next shift. (Id.)

During Plaintiff's employment with the Authority, a random audit on one of her shifts indicated that two tickets were missing. (Doc. No. 55 ¶ 27.) The audit showed that parking fee tickets had been read by the computer and were then substituted with a blank parking fee ticket without any cash being tendered. (Doc. No. 60 ¶¶ 17-18.) However, the gate was raised without payment and both the ticket read and the substitute ticket were missing. (Id.) These "unusual transactions" were reported to Lewis who then recorded the results in her notes on February 3, 2003. (Doc. No. 55 ¶¶ 28-29.) Lewis instructed the auditor to continue to audit Plaintiff's work to determine if there were ongoing "unusual transactions." (Id. ¶ 30.) Further investigation by the auditor found that not all of the tickets processed during six of Plaintiff's shifts were turned in. (Id. ¶¶ 31-32.)

During the time period under investigation by auditors, Plaintiff failed to attend work or to call in on two scheduled work days.[2] (Doc. No. 55 ¶¶ 19-20, 34.) Plaintiff was notified in writing that she was suspended from her employment, effective February 12, 2003, based on her failure to "report or call [her] immediate supervisor to report that [she] would not be available for [her] regular[ly] scheduled shift." (Id. ¶ 21; Ex. H.) Lewis filed a grievance on Plaintiff's behalf in accordance with her duties as union steward. (Doc. No. 55 ¶ 22.) After a grievance committee meeting on February 27, 2003, Plaintiff was reinstated to her position effective as of March 10, 2003. (Id. ¶¶ 23-25.) Plaintiff was notified upon reinstatement that any further violation of the Authority's policies would result in termination without the possibility of a hearing. (Id. ¶ 26; Ex. I.) At that time, Lewis did not share with the grievance committee or any supervisory personnel of the Authority that she was conducting an audit investigation of Plaintiff's shifts. (Id. ¶ 35.)

After Plaintiff was reinstated, the audit investigation continued. Lewis concluded that a total of $33 was unaccounted for; Lewis believed that Plaintiff "was manipulating the system and taking money that should have been the Parking Authority's." (Doc. No. 55 ¶¶ 36-37.) On March 14, 2003, Plaintiff was terminated based on charges of "theft, failure to follow procedures

---

[2] Several times in her answers to Defendants' statement of facts, Plaintiff cites to a document that is not contained in the record. For example, in response to several paragraphs of the Authority Defendants' statement of facts (Doc. No. 55), Plaintiff states "See Defendants Exhibit 'B' Plaintiff's Answer to Admissions # 1." (See Doc. No. 68 ¶¶ 19-21.) However, Defendants' Exhibit B does not include Plaintiff's Answer to Admissions, only Defendants' First Request for Admissions.
    The facts which Plaintiff denies, but which she has not supported with documentary evidence, must be deemed admitted. See supra note 1; see also Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) ("Judges are not like pigs, hunting for truffles buried in the record.") (citation omitted). At this juncture, then, the Court need not address the parties' arguments over whether Plaintiff admitted the averments pursuant to Rule 36(a)(3) of the Federal Rule of Civil Procedure.

and conduct prejudicial to the good working order and reputation" of the Authority. (Id. ¶¶ 39-40.) Plaintiff was notified of the termination by mail. (Id. ¶ 40; Doc. No. 68 ¶ 40.) In accordance with her duties as union steward, Lewis then filed a grievance on Plaintiff's behalf. (Doc. No. 55 ¶ 41.)

Defendant Mark Yobbi ("Yobbi"), an Authority director, notified the Harrisburg Police Department of the findings of the audit investigation. (Doc. No. 68 ¶¶ 43, 93.) Defendant Officer Richard Gibney ("Officer Gibney") met and questioned Lewis. (Doc. No. 55 ¶ 44.) Lewis provided Officer Gibney with the printouts that indicated that tickets were missing and the audit reports that sparked her investigation. (Id. ¶ 45; Doc. No. 60 ¶ 14.) On or about May 2, 2003, Officer Gibney charged Plaintiff with Theft by Unlawful Taking. (Doc. No. 60 ¶ 20.)

Plaintiff appeared before a District Justice for a preliminary hearing where Officer Gibney appeared on the State's behalf. (Doc. No. 55 ¶¶ 51-52.) Yobbi and Don Hunley, an employee of the Authority, were called to testify. (Id. ¶ 52.) The criminal charges were dismissed by the District Justice. (Id. ¶ 53.) Officer Gibney contends that the charges were dismissed because the auditor was not present to testify. (Id. ¶ 56.)

In July 2003, Defendant Detective Jason Brinker ("Detective Brinker") was assigned to Plaintiff's criminal case in order to re-file the charges. (Doc. No. 55 ¶ 55; Doc. No. 60 ¶¶ 24-25.) Detective Brinker examined the paperwork and obtained information from Yobbi and Lewis. (Doc. No. 60 ¶¶ 26-27.) Detective Brinker consulted with the Assistant District Attorney, as was required by Dauphin County policy, before refiling the charges. (Doc. No. 55 ¶ 65; Doc. No. 60 ¶ 30.) On or about October 21, 2003, Detective Brinker charged Plaintiff with Theft by Unlawful Taking and an additional charge of Access Device Fraud. (Doc. No 55 ¶ 68; Doc. No. 60 ¶¶ 29-

4

30.) When charges were re-filed, Detective Brinker was unaware that Plaintiff had filed a termination grievance against the Authority. (Doc. No. 55 ¶¶ 61-62.) In addition, Detective Brinker had not had any discussions with anyone concerning Plaintiff's employment history. (Id. ¶¶ 60-62.)

Plaintiff appeared in the Dauphin County Court of Common Pleas for a jury trial on the re-filed charges. (Doc. No. 55 ¶ 70.) The trial resulted in a hung jury. (Id. ¶ 71.) On June 15, 2004, Plaintiff again appeared in the Dauphin Country Court of Common Pleas where she agreed to participate in the Accelerated Rehabilitative Disposition ("ADR") program. (Id. ¶¶ 72-75.) In addition, Plaintiff signed a grievance form acknowledging that she did not want to "persist" with her grievance against the Authority and informed Defendant Nancy Keim, an Authority employee, that she was not going to proceed with her grievance. (Id. ¶¶ 76-77.) Plaintiff subsequently chose not to participate in the ADR program because she believed participation would be admitting guilt. (Id. ¶ 78; Doc. No. 60 ¶ 33.) Plaintiff then appeared at a bench trial in July 2005 in the Dauphin County Court of Common Pleas which resulted in a verdict of not guilty on July 7, 2005. (Doc. No. 55 ¶¶ 79-80.)

The parties dispute whether Plaintiff contacted the Director of AFSCME regarding reinstatement to her position following her acquittal.[3] In any case, she was not reinstated.

On July 9, 2007, Plaintiff filed the present action. (Doc. No. 1.) Plaintiff alleges violations of her First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983.

---

[3] Defendants state that "[a]t no time following the conclusion of Plaintiff's bench trial before Judge Bratton did Plaintiff request to be reinstated to her position of employment with the Authority." (Doc. No. 55 ¶ 81.) Plaintiff maintains that she sought to be rehired, yet provides no date for her alleged attempts to regain her employment with the Authority. (Doc. No. 68 ¶ 81.)

Plaintiff also alleges state law claims of wrongful discharge and intentional infliction of emotional distress. On October 5, 2009, Defendants filed their motions for summary judgment, statements of uncontested facts, and briefs in support of the motions. (See Doc. Nos. 54-61.) On November 23, 2009, Plaintiff filed her answers to the statements of facts and briefs in opposition. (See Doc. Nos. 67-70.)

## II. STANDARD OF REVIEW

Defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.

2006) (citations omitted); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322-23. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007) (citation omitted).

## III. DISCUSSION

In their motions for summary judgment, Defendants argue that the bulk of Plaintiff's claims are time-barred. In addition, Defendants aver that Plaintiff's individual constitutional and state law claims lack merit and thus cannot withstand summary judgment.

### A. Statute of Limitations

Plaintiff was terminated from her employment on March 14, 2003, and the criminal proceedings against her ended on July 7, 2005. (Doc. No. 55 ¶ 39; Doc. No. 30 at 2.) Plaintiff did not file the complaint for the present action until July 9, 2007. (See Doc No. 1.) As a result, Defendants contend that the complaint was not timely filed. (Doc. No. 56 at 3-5; Doc. No. 61 at 5-9.)

There is no specific statute of limitations contained in 42 U.S.C. § 1983. The Supreme

Court has directed that the applicable statute of limitations "is that which the State [where the cause of action arose] provides for personal-injury torts." Wallace v. Kato, 549 U.S. 384, 387 (2007) (citations omitted). In the present case, claims under § 1983 are governed by the Pennsylvania two-year statute of limitations for personal injury torts. Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d. Cir. 1985) (citing 42 Pa. Cons. Stat. Ann. § 5524 (Purdon Supp. 1984)). Under federal law, the limitations period of a § 1983 claim "'begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the [§] 1983 action.'" Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) (citation omitted).

Plaintiff argues that the claims were timely filed pursuant to the continuing violations doctrine because there were continuing acts of retaliation that made the filing of the complaint on July 9, 2007 timely. (Doc. No. 69 at 10-11; Doc. No. 70 at 10-11.) The continuing violations doctrine is an exception in equity to the timely filing requirement. Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d. Cir. 2001) (citation omitted). The doctrine allows a plaintiff to pursue a claim that, if standing alone, would be untimely, but is considered timely because the plaintiff demonstrates that the untimely act was part of a pattern or practice of conduct occurring both within and without the limitations period. McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir. 2007) (citation omitted). A plaintiff must do two things in order to establish that a claim falls within the doctrine: "(1) he must demonstrate that at least one act occurred within the filing period[,] and (2) he must establish that the conduct is more than the occurrence of isolated or sporadic acts, i.e., the conduct must be a persistent, on-going pattern." Id. (citations and internal quotation marks omitted). In order to assess the second inquiry, the Third Circuit has directed that

8

> courts should consider at least three factors: (1) subject matter whether–the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency–whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence–whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Cowell, 263 F.3d at 292 (citation omitted); see, e.g., Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 580-82 (E.D. Pa. 2004). The third factor, the degree of permanence, is the most important consideration. Cowell, 263 F.3d at 292 (citation omitted).

In addition to citing the continuing violations doctrine, Plaintiff also alleges that she was unable to assert her rights initially pursuant to Heck v. Humprey, 512 U.S. 477 (1994). In Heck, the Supreme Court recognized that an action for damages attributable to a malicious prosecution accrues on the date that criminal proceedings are terminated in the plaintiff's favor. Id. at 489-90. Plaintiff argues that this holding applies to her claims and makes them timely. (Doc. No. 69 at 10-11; Doc. No. 70 at 11.) This argument receives short shrift, however. Assuming *arguendo* that the accrual date of Plaintiff's claims was delayed under Heck, Plaintiff did not file her claims until July 9, 2007, over two years after she had received a favorable termination of the criminal charges against her on July 7, 2005. Therefore, Plaintiff's reliance on Heck does not help her to avoid the statute of limitations bar.

Applying the above-stated framework, the Court will address the timeliness of each of Plaintiff's claims.

### i. First Amendment Retaliation

Plaintiff claims the Authority retaliated against her for filing grievances and defending

9

herself in court. (Doc. No. 69 at 10.) In their motions for summary judgment, Defendants aver that the accrual date for Plaintiff's claims was her termination from the Authority on March 14, 2003, or, at the very latest, when the criminal charges were dismissed against her on July 7, 2005. (Doc. No. 56 at 5; Doc. No. 61 at 5-9.) Thus, Defendants assert that the claims are time-barred because the claims were brought over four years after Plaintiff's termination, and over two years after her exoneration. Yet, according to Plaintiff's theory, the retaliatory action continues to this day because she was never reinstated to her position with the Authority. In support, Plaintiff cites National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), in which the Supreme Court recognized that discrete acts of discriminatory action include "termination, failure to promote, denial of transfer, or refusal to hire . . . ." Morgan, 536 U.S. at 114; see also O'Connor v. City of Newark, 440 F.3d 125, 128 (3d. Cir. 2006) (applying Morgan to § 1983 claims).

Although she has failed to identify a date for such a request and denial, Plaintiff has alleged that the Authority refused to rehire her after the criminal proceedings were terminated. (Doc. No. 69 at 7, 10.) Reviewing the evidence in the light most favorable to Plaintiff, a failure to rehire her on or after July 9, 2005, could qualify as an identifiable discrete action. Therefore, Plaintiff's First Amendment retaliation claim for failure to rehire against the Authority is not time-barred because her complaint was filed within two years after the alleged retaliatory action.

However, the continuing violations doctrine does not apply in the present context to allow Plaintiff to bypass the two-year statute of limitations and make timely her other allegations of retaliation that occurred prior to July 7, 2005. Under Morgan, the continuing violations doctrine is inapplicable to discrete actions such as termination and refusal to rehire. Morgan, 536 U.S. at 113 (holding that "discrete discriminatory acts are not actionable if time barred, even when they

10

are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act."); see also O'Connor, 440 F.3d at 127-28 ("We can thus take from Morgan the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation."). It was incumbent upon Plaintiff to bring her claims within two years of each discrete act or, if Heck applied to delay the accrual date, within two years of her exoneration. Plaintiff failed to do so. Therefore, her First Amendment retaliation claims based on her termination are time-barred.

Similarly, Plaintiff's First Amendment retaliation claims against Defendants Officer Gibney and Detective Brinker are time-barred. All actions that could potentially have led to a First Amendment retaliation claim against the Defendant Officers occurred before July 7, 2005. Even if Plaintiff's claims did not accrue until she was exonerated, Plaintiff did not file her claims until over two years had passed. Therefore, the First Amendment retaliation claims against Defendants Officer Gibney and Detective Brinker are time-barred and must be dismissed.[4]

      **ii.      Malicious Prosecution**

The statute of limitations for a malicious prosecution claim accrues on the day that the criminal proceedings against a plaintiff are terminated in her favor. Torres v. McLaughlin, 163

---

[4] Even if Plaintiff's First Amendment retaliation claims against Officer Gibney and Detective Brinker were not time-barred, Plaintiff's claim against them lacks merit. In addition to satisfying the elements for a First Amendment retaliation claim outlined in Part III.B.i infra, when a Plaintiff's retaliation claim is based on a retaliatory prosecution theory, a Plaintiff must prove that the underlying criminal charge was unsupported by probable cause. See Hartman v. Moore, 547 U.S. 250, 252 (2006); Miller v. Mitchell, 598 F.3d 139, 154 (3d Cir. 2010). Plaintiff does not offer any evidence to support the contention that Officer Gibney and Detective Brinker filed criminal charges against her without probable cause.

11

F.3d 169, 177 (3d Cir. 1998); see also Kossler v. Crisanti, 564 F.3d 181, 186-87 (3d Cir. 2009).

Here, the criminal proceedings were terminated in Plaintiff's favor on July 7, 2005. Plaintiff did not file the complaint in the present action until July 9, 2007. (See Doc. No. 1.) The complaint was filed two days after the two-year statute of limitations period for the § 1983 claim expired. Therefore, Plaintiff's malicious prosecution claims are time-barred and must be dismissed. Plaintiff's contention that the cause of action was based on a continuing violation has no merit.[5]

### iii. Due Process and Equal Protection

Plaintiff alleges that she was "treated unequally . . . by the Authority defendants who subjected her to a separate and extremely severe standard of discipline" and that she was also deprived of her "procedural due process rights by all of the defendants who used the criminal justice system . . . to unlawfully apply that system to the plaintiff as a way to force her from her employment." (Doc. No. 30 ¶ 16.) Any application of the criminal justice system to Plaintiff concluded on July 7, 2005. Therefore, the claims are time-barred because Plaintiff did not file her complaint until July 9, 2007, two days after the statute of limitations had expired. As a result,

---

[5] The Court notes that even if Plaintiff's malicious prosecution claims were not time-barred, the underlying claims lack merit. To prove malicious prosecution under § 1983, a plaintiff must demonstrate, inter alia, that the defendants initiated the criminal proceeding and that "the proceeding was initiated without probable cause." Kossler, 564 F.3d at 186 (citation omitted). It is questionable whether the private individuals in this case would be linked to the initiation of criminal proceedings, since "the State's Attorney . . . prosecutes a criminal action." Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996) (citation omitted). Plaintiff has also failed to present evidence that the proceedings lacked probable cause. See Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted) (stating that probable cause exists when the facts and circumstances known to the arresting officer "are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested").

Plaintiff's claims for violation of her due process and equal protection rights must be dismissed.[6]

### iv. Intentional Infliction of Emotional Distress

Pennsylvania state law claims for intentional infliction of emotional distress ("IIED") are also subject to a two year statute of limitations period. 42 Pa. Cons. Stat. Ann. § 5524 (West 2004). To the extent the IIED claim is based on the failure to rehire as discussed above, the claim is not time-barred as against the Authority Defendants. However, Officer Gibney and Detective Brinker were not involved after the termination of the criminal proceedings on July 7, 2005. Therefore, any IIED claims against the officers are time-barred.

### v. Wrongful Discharge

Wrongful discharge claims in Pennsylvania are subject to a two-year statute of limitations period. See Anderson v. Consol. Rail Corp., 297 F.3d 242, 251-52 (3d Cir. 2002). The statute of limitations bars Plaintiff's wrongful discharge claim against the Authority Defendants because the complaint was filed in excess of four years after Plaintiff was terminated from her position.[7] Therefore, the wrongful discharge claim must be dismissed.

### B. Merits of Plaintiff's Remaining Claims

Because Plaintiff's claims that are based on the Authority's failure to rehire her are not

---

[6] In addition, Plaintiff has voluntarily withdrawn her equal protection claims. (See Doc. No. 70 at 17.)

[7] Even if Plaintiff's wrongful discharge claim was not time-barred, the claim would still fail on the merits. As the Authority Defendants assert, Plaintiff cannot have a wrongful discharge cause of action available to her because she, as a member of the AFSCME, was not an at-will employee. (Doc. No. 56 at 23.) Plaintiff failed to address Defendants' claim in her reply brief and therefore has not set forth any facts to sufficiently establish that she was an at-will employee. See Phillips v. Babcock & Wilcox, 503 A.2d 36, 37-38 (Pa. Super. 1986) (holding that an action for the tort of wrongful discharge "is available only when the employment relationship is at will") (citation omitted).

13

time-barred, the Court will address them on their merits. These include claims for First Amendment retaliation and IIED. The Court will also address Plaintiff's civil conspiracy claims.

### i. First Amendment Retaliation

Plaintiff claims that the Authority violated her First Amendment rights by "engaging in a policy and practice . . . of using a criminal process as a way to deny awarding her the reinstatement that she had won in March of 2003, through a civil grievance process." (Doc. No. 30 ¶ 8.)[8] As stated above, the alleged retaliatory action must have been the failure of the Authority to rehire Plaintiff after the criminal proceedings had terminated in her favor because all actions occurring prior to the failure to rehire are time-barred.

First Amendment rights extend to "a public employee who has petitioned the government through a formal mechanism such as the filing of a lawsuit or grievance"; the employee "is protected under the Petition Clause from retaliation for that activity, even if the petition concerns a matter of solely private concern." Foraker v. Chaffinch, 501 F.3d 231, 236 (3d Cir. 2007) (citing San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994)). To state a prima facie case of retaliation, a plaintiff must show (1) "that his conduct was constitutionally protected" and (2) that "his protected activity was a substantial or motivating factor in the alleged retaliatory action." El-Ganayni v. U.S. Dept. of Energy, 591 F.3d 176, 184 (3d Cir. 2010) (quoting Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002)) (internal quotation marks omitted). A defendant

---

[8] This claim was also brought against Yobbi, Lewis, Keim, Detective Brinker, and Officer Gibney alleging that all Defendants "engaged in unlawful misconduct violating plaintiff's [First] Amendment right to be free of retaliation for exercising her rights to petition for a redress of grievances." (Doc. No. 30 ¶ 9.) Although it is unclear in the amended complaint which allegations are connected with which party, only the merits of Plaintiff's claims against the Authority Defendants will be addressed because the claims against Officer Gibney and Detective Brinker are time-barred. (See Part III.A.i supra.)

may defeat plaintiff's prima facie case by "showing that it would have taken the same action even in the absence of the protected conduct." Id. (quoting Ambrose, 303 F.3d at 493) (internal quotation marks and further citation omitted).

In regard to the first prong of her prima facie case, Plaintiff states that she "was retaliated against for filing a grievance to get her job back after charges were dismissed." (Doc. No. 70 at 12.) Because Plaintiff's grievances were filed on her behalf in accordance with the union procedures, (see Doc. No. 55 ¶ 22), the grievances were presumably filed in accordance with a collective bargaining agreement. Therefore, the grievances were protected by the First Amendment. See Foraker, 501 F.3d at 236.

Although Plaintiff's filing of a grievance qualifies as protected activity under the First Amendment, Plaintiff has not established a causal connection between that protected activity and her failure to be rehired. A plaintiff may establish the requisite causal nexus by demonstrating either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). In the absence of such evidence, a plaintiff must show that the trier of fact should infer causation from the "evidence gleaned from the record as a whole." Id. (internal quotation marks and citation omitted). Plaintiff has demonstrated none of these things. First, at least two years elapsed between the time that Plaintiff filed her grievance in 2003 and her failure to be rehired in or around 2005. See Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007) (finding five-month gap was insufficient to establish a causal connection between protected activity and adverse employment action). Second, Plaintiff has not produced any evidence demonstrating that whoever was responsible for making the decision not

to rehire her was aware of her grievances from 2003. See Ambrose, 303 F.3d at 493 (3d Cir. 2002) (holding that retaliation claim failed where plaintiff failed to present evidence that employer was aware of employee's protected conduct). Therefore, because Plaintiff has failed to make out a prima facie case of First Amendment retaliation, summary judgment must be granted in favor of Defendants.[9]

### ii. Intentional Infliction of Emotional Distress

Plaintiff alleges that the "facts in this case meet the standards laid down in Hoy v. Angelone[, 720 A.2d 745 (Pa. 1998)]." (Doc. No. 70 at 19.) Hoy stated that an action for intentional infliction of emotional distress is present "[o]nly if conduct which is extreme or clearly outrageous is established . . . ." Id. at 753-54. Further, "'the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" Id. (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)). Here, Plaintiff has provided nothing more than conclusory statements as to the IIED claim and pointed to no facts to support a claim of IIED. (See Doc. No. 70 at 19.) Therefore, summary

---

[9] Even if Plaintiff had established a prima facie case, summary judgment would still be appropriate for the Authority Defendants because they have shown they would have taken the same action even if the protected activity had not taken place. El-Ganayni, 591 F.3d at 184. Defendants have put forward evidence that the results of the audit investigation conducted during Plaintiff's shifts "ultimately provided grounds for Plaintiff's termination . . . ." (Doc. No. 56 at 7; Doc. No. 55 ¶ 45; Doc. No. 60 ¶ 14.) In contrast, Plaintiff has not set forth any facts to demonstrate that there is any question that, notwithstanding the grievance filed, Defendants would have rehired Plaintiff. Therefore, no reasonable factfinder could conclude that the protected activity was the but-for cause of the Authority's failure to rehire Plaintiff. See, e.g., Sarullo v. U.S. Postal Serv., 352 F.3d 789, 800-01 (3d Cir. 2003) (finding that in Title VII case, because plaintiff-employee was previously terminated for cause, "no reasonable fact finder could conclude anything other than that [defendant] would have made exactly the same decision regarding [plaintiff's] rehiring if he had never filed an EEOC complaint").

judgment is appropriate for the Authority Defendants against Plaintiff's IIED claim.

### iii. Conspiracy Claim

Plaintiff has chosen to voluntarily withdraw the conspiracy claim as against Officer Gibney and Detective Brinker citing that "there is not sufficient evidence of their being part of a conspiracy." (Doc. No. 69 at 16.) Therefore, these claims will be dismissed. Plaintiff fails to reference the conspiracy claim against the Authority Defendants in her reply brief and simply reiterates the statement made in reply to the arguments of Defendants Officer Gibney and Detective Brinker. (See Doc. No. 70 at 14.) In any case, because Plaintiff fails to state an underlying § 1983 violation against Defendants, her claim for conspiracy must also be dismissed. See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 407 (3d Cir. 2000) ("'Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort.'") (quoting Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983)), abrogated on other grounds as recognized in, United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA, 316 F.3d 392 (3d Cir. 2003).

## IV. CONCLUSION

The majority of Plaintiff's claims are time-barred because Plaintiff filed her complaint at least two days after the applicable limitations period expired. Of her remaining claims based on the Authority's failure to rehire her, Plaintiff has failed to produce sufficient evidence to withstand Defendants' motions for summary judgment. Therefore, summary judgment will be granted in favor of Defendants on all claims. Accordingly, Defendants' claims for immunity

need not be addressed.  An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA BALTIMORE** | : | |
|     Plaintiff, | : | Civil Action No. 1:07-cv-01244 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **HARRISBURG PARKING** | : | |
| **AUTHORITY, et al.,** | : | |
|     Defendants. | : | |

### ORDER

**AND NOW**, this 15th day of June 2010, upon consideration of Defendants' motions for summary judgment (Doc. Nos. 54, 59), it is **HEREBY ORDERED THAT** Defendants' motions are **GRANTED** as to all claims.

                                                      S/ Yvette Kane
                                                    Yvette Kane, Chief Judge
                                                    United States District Court
                                                    Middle District of Pennsylvania